IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| HICKORY GROVE MISSIONARY BAPTIST CHURCH, INC., | : : : | |
| Plaintiff, | : : | |
| v. | : : : | CIVIL ACTION No. 5:11-CV-407 (CAR) |
| CHURCH MUTUAL INSURANCE COMPANY, | : : : | |
| Defendant. | : : | |

### ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This action arises from Plaintiff Hickory Grove Missionary Baptist Church, Inc.'s insurance policy with Defendant Church Mutual Insurance Company. Plaintiff contends Defendant breached the terms of the policy by failing to pay for additional covered damages to their property, Hickory Grove Baptist Church.[1] Presently before the Court is Defendant's Motion for Summary Judgment. Having carefully considered the parties' arguments, the record, and applicable law, Defendant's Motion [Doc. 28] is **GRANTED IN PART** and **DENIED IN PART**.

### LEGAL STANDARD

Summary judgment is proper if the movant "shows that there is no genuine issue

---

[1] The Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332. Georgia law governs the resolution of Plaintiff's claims. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

as to any material fact and the movant is entitled to a judgment as a matter of law."[2] Not all factual disputes render summary judgment inappropriate; only a genuine issue of material fact will defeat a properly supported motion for summary judgment.[3] This means that summary judgment may be granted if there is insufficient evidence for a reasonable jury to return a verdict for the nonmoving party or, in other words, if reasonable minds could not differ as to the verdict.[4]

On summary judgment, the Court must view the evidence and all justifiable inferences in the light most favorable to the nonmoving party; the Court may not make credibility determinations or weigh the evidence.[5] The moving party "always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and that entitle it to a judgment as a matter of law.[6] If the moving party discharges this burden, the burden then shifts to the nonmoving party to respond by setting forth specific evidence in the record and articulating the precise manner in which that evidence creates a genuine issue of material fact or that the moving party is not entitled to a judgment as a matter of law.[7] This evidence must consist of

---

[2] Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).
[3] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).
[4] *See id.* at 249-52.
[5] *See id.* at 254-55; *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992).
[6] *Celotex,* 477 U.S. at 323 (internal quotation marks omitted).
[7] *See* Fed. R. Civ. P. 56(e); *see also Celotex,* 477 U.S. at 324-26.

more than mere conclusory allegations or legal conclusions.[8]

## FACTUAL BACKGROUND

For purposes of this Motion, the material facts in the light most favorable to Plaintiff, the non-movant, are as follows:

At all times relevant, Defendant insured Plaintiff's property, Hickory Grove Baptist Church, under Policy Number 028393-02-102614 ("the Policy").[9] On September 1, 2009, Plaintiff hired James Hines d/b/a Hines Construction or James Hines Construction ("Hines") to construct a church on Plaintiff's real property.[10] On September 23, 2009, during construction (specifically while Hines was installing roof trusses), 59 roof trusses at the front of the church structure collapsed.[11] Plaintiff reported the loss to Defendant on September 25, 2009.

Defendant hired independent insurance adjuster Ed Whiting and structural engineer Randall H. Peters to investigate the loss.[12] Whiting and Peters inspected the loss site on September 26, 2009, and October 21, 2009.[13] During their inspection, Peters observed that the 59 trusses had collapsed with a "racking or domino effect" toward the front of the church and damaged some exterior stud frame walls, causing them to tilt

---

[8] *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991).
[9] Ins. Policy [Docs. 29, 29-1, 29-2, 29-3, 29-4].
[10] Complaint, ¶ 7 [Doc. 1-3].
[11] *Id.* at ¶ 8; Peters Dep., pp. 16-17 [Docs. 30, 30-1].
[12] Whiting Dep., p. 14 [Doc. 29-5]; Peters Dep., pp. 13, 26.
[13] Peters Dep., pp. 13, 26.

outward.[14]  He opined that the remaining rear trusses over the sanctuary did not sustain damage due to the collapse; instead, he determined that any damage to the remaining trusses "occurred over a long period of time due to exposure without lateral bracing."[15] Peters ultimately concluded that the 59 trusses collapsed due to a "total absence of proper bracing."[16]  Based on his observations, Peters estimated the total cost for Plaintiff's loss, including the collapsed trusses and certain stud walls, at $62,169.60.[17]  On November 24, 2009, Defendant sent Plaintiff a claim payment check for $61,699.60, representing Peters' estimate less the Policy's $500.00 deductible.[18]

In late December 2009, Plaintiff contacted Defendant about additional damage to the front of the building related to the September 23rd collapse.[19]  Accordingly, Peters and Whiting returned to the church property on January 5, 2010.[20]  During a meeting with Plaintiff's representative, Whiting agreed to determine whether the additional damage was covered under the terms of the Policy.[21]  In turn, Plaintiff's representative agreed to "to put together some numbers for … [Defendant] to consider" when making its determination.[22]  Peters did not assess or calculate any additional damage during or

---

[14] *Id.* at 15-16, 38, 53-54.
[15] Peters Dep., pp. 18-22, 30; Peters Engineering Report, p. 2 [Doc. 30-2].
[16] Peters Dep., p. 17.
[17] Peters Dep., pp. 53-54; Peters Estimate, pp. 1-2 [Doc. 30-3, pp. 9-10].
[18] Whiting Dep., pp. 34-36; Peters Estimate, pp. 1-2 [Doc. 30-3, pp. 9-10].
[19] Whiting Dep., pp. 32, 36; Whiting Aff., ¶ 5 [Doc. 34-7].
[20] Whiting Dep., pp. 31-32.
[21] *Id.* at 33-34.
[22] *Id.* at pp. 31-32; 36.

4

after the meeting.[23]

Plaintiff's representative did not submit an estimate of any additional claims after the January 5, 2010 meeting.[24] Accordingly, in a letter dated February 8, 2010, Whiting stated that he had advised Plaintiff's representative "to present an estimate for any additional damage that was believed to be related to the collapse of the trusses."[25] Whiting then requested that Plaintiff "provide me with any additional claim within the next 30 days that the church would like to make for loss and damage related to the above[-]captioned claim so that we might move this matter to closure."[26]

Plaintiff did not contact Defendant again until it served Defendant with the present lawsuit on September 12, 2011. During discovery, Plaintiff's engineering expert, Michael E. Clark, asserted that a portion of the collapsed trusses damaged the front entry of the church.[27] He also opined that the collapsed trusses caused the sanctuary walls to bow out extensively and, as a result, the walls below the remaining 10 trusses "were pushed out on top."[28] In turn, the remaining trusses "settled and pushed out the tops of the wall even though said trusses had not failed and collapsed."[29] Plaintiff seeks payment for these additional damages under the Policy.

---

[23] *See* Whiting Dep., pp. 31-32; Peters Dep., pp. 43-44.
[24] *See* Feb. 8, 2010 Letter [Doc. 35-1].
[25] *Id.*
[26] *Id.*
[27] Clark Aff., ¶ 9.
[28] *Id.* at ¶ 10.
[29] *Id.*

**DISCUSSION**

Plaintiff asserts Defendant is liable for breach of contract as well as attorney's fees under O.C.G.A. § 13-6-11 for Defendant's bad faith refusal to pay the full amount of insurance proceeds under the Policy. In opposition, Defendant asserts (1) the Policy does not cover any additional damage to the church; (2) Plaintiff's failure to cooperate with Defendant precludes the instant action; and (3) Plaintiff cannot recover attorney's fees under O.C.G.A. § 13-6-11 because O.C.G.A. § 33-4-6 provides the exclusive remedy for an insurer's failure to promptly pay a claim. The Court addresses each of Defendant's arguments in turn.

### I.   Policy Coverage

Under Georgia law, "[t]he interpretation of a contract is normally a question of law to be resolved by the court."[30] "Insurance is a matter of contract[,] and the rules governing construction of contracts are applicable to insurance contracts."[31] To determine whether a claim is covered by an insurance policy, the Court engages in a three-step inquiry. First, a court must determine if the contract language at issue is clear and unambiguous.[32] "If the terms of the contract are plain and unambiguous, the contract must be enforced as written[.]"[33] If the contract is ambiguous, the Court then applies the rules of contract

---

[30] *Willesen v. Ernest Commc'ns, Inc.*, 323 Ga. App. 457, 459 (2013) (internal citation omitted).

[31] *Wilson v. S. Gen. Ins. Co.*, 180 Ga. App. 589, 590 (1986) (internal quotation omitted).

[32] *See Mitchell v. Cambridge Prop. Owners Ass'n*, 276 Ga. App. 326, 327 (2005).

[33] *Alea London Ltd. V. Am. Home Servs., Inc.*, 638 F.3d 768, 773-74 (11th Cir. 2011) (internal quotation omitted).

construction to resolve the ambiguity.[34]  If the contract remains ambiguous after applying the rules of construction, a jury or other factfinder must determine the parties' intent.[35]

In this case, the parties dispute the breadth of Policy coverage in the event of a "collapse."  The Policy states that Defendant "will pay for direct physical loss or damage to Covered Property, caused by collapse of a building or any part of a building that is insured under this Coverage Form[.]"[36]  "Collapse" is narrowly defined as "an abrupt falling down or caving in of the building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose."[37]  "Collapse" does not include "[a] building or any part of a building that is in danger of falling down or caving in" or any part of the building that is standing, "even if it has been separated from another part of the building" or "shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage, or expansion."[38]

It is undisputed that the 59 trusses collapsed.  However, Defendant claims that the Policy only covers these trusses and does not cover any other damage to the remainder of the building that did not literally collapse.  The Court disagrees.  Defendant agreed to "pay for direct physical loss <u>or damage</u> … <u>caused by collapse</u>."[39]  Thus, by its plain terms, the Policy encompasses all damage caused by the collapsed trusses, not merely the trusses

---

[34] *See Hammer Corp. v. Wade*, 278 Ga. App. 214, 217 (2006); *see also* O.C.G.A. § 13-2-2.
[35] O.C.G.A. § 13-2-1.
[36] Ins. Policy, Bates 59 [Doc. 29-1, p. 16].
[37] *Id.*
[38] *Id.*
[39] *Id.*

7

themselves. Even assuming, *arguendo*, that the adjective "direct" creates some ambiguity, the Court must construe this provision against Defendant, the insurer.[40] Accordingly, the Court concludes that "direct" modifies "loss," not "damage." Consequently, this provision covers both direct physical loss (i.e. the 59 trusses) and any other damage caused by their collapse.[41]

In light of this construction, a jury must determine whether any additional damage resulted from the collapse. Although Defendant's engineer, Randall H. Peters, asserts that any remaining damages were caused by the building's deficient design and construction, Plaintiff's engineering expert, Michael E. Clark, concludes that additional collapse-related damages remain. A jury must resolve this dispute and determine the value of any additional covered loss.[42]

## II.  Failure to Cooperate

In Georgia, "an insurer may require its insured to abide by the terms of his policy and cooperate with the insurer's investigation, as a precondition to recovery."[43] If an insurance contract contains a cooperation clause, an insured must "provide any 'material information' to the insurer that the insurer is entitled to receive under the insurance

---

[40] *Claussen v. Aetna Cas. Sur. Co.*, 259 Ga. 333, 335 (1989) ("[I]f an insurance contract is capable of being construed two ways, it will be construed against the insurance company and in favor of the insured.").

[41] The Court does not consider the third-party coverage definition of "[c]ollapse hazard" in reaching this conclusion. *See* Ins. Policy, Bates 94 [Doc. 29-2, p. 8].

[42] The Court declines to address Defendant's cursory *Daubert* analysis in the instant Motion. *See* Motion for Summary Judgment, p. 14 n.2 [Doc. 28-1]. To the extent Defendant objects to the relevance of Plaintiff's expert testimony, it may raise those objections at trial.

[43] *Hall v. Liberty Mut. Fire Ins. Co.*, No. 08-12051, 2009 WL 235640, at *2 (11th Cir. 2009).

policy."[44]  "A total failure to comply with policy provisions may constitute a breach precluding recovery from the insurer as a matter of law."[45]  However, "the insurer's failure to act with diligence and good faith in securing the necessary information … will preclude the grant of summary judgment to the insurer on the issue of the insured's compliance with policy prerequisites."[46]

In this case, the Policy required Plaintiff to "cooperate with [Defendant] in the investigation or settlement of the claim" and "give us complete inventories of the damaged and undamaged property[,] … [including] quantities, costs values and amount of loss claimed" at Defendant's request.[47]  Plaintiff's cooperation was a condition precedent to bringing suit; the Policy prohibited Plaintiff from bringing a legal action against Defendant unless it "fully compli[ed]" with these terms.[48]  Based on these terms, Defendant asserts that Plaintiff cannot pursue the instant action because it failed to provide an estimate of any additional damages related to the collapse.  The Court disagrees for two reasons.

First, Defendant has failed to establish that Plaintiff's estimate was "material"

---

[44] *Hines v. State Farm Fire & Cas. Co.*, 815 F.2d 648, 651 (1987) (quoting *Halcome v. Cincinnati Ins. Co.*, 254 Ga. 742, 744 (1985)).
[45] *Diamonds & Denims, Inc. v. First of Ga. Ins. Co.*, 203 Ga. App. 681, 683 (1992).
[46] *Id.*; *State Farm Fire & Cas. Co. v. King Sports, Inc.*, 827 F. Supp. 2d 1364, 1375 (N.D. Ga. 2011) (noting that the insurer must show its diligence and good faith in securing information to prevail on summary judgment), *aff'd*, 489 F. App'x 306 (11th Cir. 2012).
[47] Ins. Policy, Bates 52-53 [Doc. 29-1].
[48] *Id.* at Bates 27 [Doc. 29].  Both these provisions are encompassed in the "Property Coverage Part and Its Forms and Endorsements."  *Id.* at Bates 1 [Doc. 29].

9

because Defendant had alternative means of acquiring the same information.[49]  In fact, Defendant's structural engineer, Peters, initially observed the collapse on two separate occasions and calculated the value of the trusses and certain stud walls without any apparent input from Plaintiff or its representatives.[50]  Moreover, Peters had ample opportunity to evaluate additional damage when he returned to the property on January 5, 2010, at Plaintiff's request.[51]  In short, Defendant knew Plaintiff was concerned about additional damage to the building and had the means to calculate the value of that damage.  A jury must determine whether Plaintiff's own estimate was material in light of these facts.

Second, the Court cannot conclude, as a matter of law, that Defendant diligently pursued the requested estimate.  An insurer must "make a reasonable effort to obtain an insured's cooperation" before the insurer is relieved of its obligations under the insurance contract.[52]  However, Georgia law has not defined what minimal effort is required of the insurer.  As a general rule, insurers commonly request a particular document or information numerous times before denying coverage for noncooperation.[53]  Others

---

[49] *See Hines*, 815 F.2d at 651 (insurer had alternative means of obtaining information but did not attempt to do so); *Roberts v. State Farm Fire and Cas. Co.*, No. 7:11-CV-86 (HL), 2011 WL 6215700, at *6 (M.D. Ga. Dec. 14, 2011) (insured did not provide "sufficient information to [insurer] for it to obtain the [requested] documents").
[50] *See*, Peters Dep., pp. 53-54; Peters Estimate, pp. 1-2 [Doc. 30-3, pp. 9-10].
[51] *See* Whiting Dep., pp. 31-32; Peters Dep., pp. 43-44.
[52] *King Sports, Inc.*, 827 F. Supp. 2d at 1375 (citing *Wolverine Ins. Co. v. Sorrough*, 122 Ga. App. 556, 557 (1970)).
[53] *See, e.g.*, *Allstate Ins. Co. v. Hamler*, 247 Ga. App. 574, 577 (2001) (insurer made "numerous, clear requests"); *KHD Deutz of Am. Corp. v. Utica Mutual Ins. Co., Inc.*, 220 Ga. App. 194, 196 (1996)

explicitly direct the insured to the cooperation provision or at least notify the insured of the possible consequences of noncooperation.[54]  By contrast, in this case, Defendant orally requested an estimate on January 5, 2010, and repeated that request a single time in its February 8, 2010 letter.[55]  Defendant did not refer Plaintiff to the Policy's cooperation provision or otherwise inform the Plaintiff of its intent to disclaim any additional coverage if it did not receive Plaintiff's estimate.  Rather, Defendant's letter suggested that an estimate would merely assist the parties in prospectively "mov[ing] this matter to closure."[56]  Defendant has not cited any case—and the Court is not aware of any—that suggests this minimal communication constitutes a "reasonable effort" to obtain Plaintiff's cooperation as a matter of law.

Accordingly, two additional questions of fact remain regarding Plaintiff's failure to cooperate: (1) whether Plaintiff's estimate constituted material information; and (2) whether Defendants made a reasonable effort to obtain this information.  These factual issues must be resolved by a jury.  Consequently, Defendant's Motion for Summary Judgment is **DENIED IN PART**.

---

(insured refused to respond to insurer's "numerous efforts" to communicate); *Hall*, 2009 WL 235640, at *3 (insured failed to respond to insurer's "repeated requests for specific documents").
[54] *See, e.g., Wolverine Ins. Co. v. Sorrough*, 122 Ga. App. 556, 558 (1970) (insurer made several attempts to obtain cooperation in accordance with the terms of the policy and further advised insured that noncooperation would permit insurer to disclaim coverage); *S. Realty Mgmt., Inc. v. Aspen Specialty Ins. Co.*, No. 1:08-cv-00572-JOF, 2010 WL 966426, at *4 (N.D. Ga. 2010) (insurer requested documents several times and directed insured's "attention to the portion of the policy allowing [the insurer] to make such a request")
[55] *See* Feb. 8, 2010 Letter [Doc. 35-1].
[56] *See id.*

### III. Attorney's Fees

Finally, a party cannot recover under a general penalty provisions such as O.C.G.A. § 13-6-11 where the Georgia General Assembly has provided another specific procedure and penalty for non-compliance.[57] In this case, O.C.G.A. § 33-4-6 provides the exclusive remedy for Defendant's bad faith refusal to pay a claim.[58] Therefore, Plaintiff may not assert a claim for damages pursuant to another statutory section based on Defendant's alleged misconduct.[59] Accordingly, Defendant's Motion is **GRANTED** as to Plaintiff's request for attorney's fees pursuant to O.C.G.A. § 13-6-11.

### CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment [Doc. 28] is hereby **GRANTED IN PART** and **DENIED IN PART**.

**SO ORDERED**, this 21st day of March, 2014.

> S/ C. Ashley Royal
> C. ASHLEY ROYAL, CHIEF JUDGE
> UNITED STATES DISTRICT COURT

BBP/ssh

---

[57] *McCall v. Allstate Ins. Co.*, 251 Ga. 869, 871-72 (1984).
[58] *Howell v. Heritage Ins. Co.*, 214 Ga. App. 536, 536 (1994).
[59] *United Servs. Auto. Ass'n v. Carroll*, 226 Ga. App. 144, 148 (1997).